May it please the Court, even if the plaintiffs had a cause of action in this case... You're Ms. Hacker, right? Yes, Your Honor. I apologize. Ms. Hacker, or Heather Hacker for the State. May it please the Court, even if the plaintiffs had a cause of action in this case, and they do not, the State should prevail on the merits because staff members from Planned Parenthood in Houston were captured on videotape admitting that one of their doctors was performing abortions to harvest fetal tissue for her own research and, quote, took it home in her cooler. They stated that they can, quote, get creative and alter the standard of care to modify abortion procedures to obtain the best specimens because they've done it. And they expressed willingness to obtain intact fetal cadavers for buyers, even if it increased patient pain. Texas Medicaid patients should be able to rely on their provider for ethical medical treatment, and those patients cannot rely on Planned Parenthood for that. And so isn't this just like Gee? No, Your Honor. This case is different from Gee for several reasons, mainly because in Gee the State conceded that Planned Parenthood was a qualified provider. This case is all about the Inspector General's determination that Planned Parenthood is not a qualified provider on the basis of numerous grounds of evidence. But, and I don't know, I'm thinking of the former Judge Gee, so maybe that's why I'm pronouncing it that way. Maybe you have more insight into the pronunciation. But Gee or Gee, isn't the bottom line there that they didn't shut down the clinic as being unqualified? And that's also happened here. Planned Parenthood can still provide all kinds of services. So if they're really so unethical and so all of those things, why are they still operating? That was one of the things that the Gee court mentioned. But the Gee court also placed a lot of emphasis on the fact that the State had conceded in that case that Planned Parenthood was qualified, which is not what happened in this case. But going directly to your question, there are different standards for licensing and different standards for Medicaid qualification. The Qualified Provider Provision 42 U.S.C. 1396 A.A. 23 uses the language qualified to provide the services. Obviously, qualified must mean something different than just licensed. Otherwise, every licensed doctor or clinic would be a qualified Medicaid provider, and that's not the case. But, I mean, if you have a doctor acting unethically, why are they still practicing? I mean, to me, ethics is still a factor even in licensing, or ought to be. Maybe I'm missing something. I know it is for attorneys. I thought it was for doctors as well. I would agree with you, Your Honor. I think that is a consideration that would go toward the licensing. But here we have different standards for licensing and different standards for Medicaid qualifications. Well, it's not so much a matter of different standards. It's different bodies making determinations for different purposes, right? Yes, and that's also correct. In this case, it was the Inspector General who made the decision to terminate the Medicaid provider agreements, and licensing of facilities is handled by a different agency, and licensing of individual physicians is handled by the Texas Medical Board. So those are different decision makers. There are different processes that that follows and different factors that are weighed in in determining what the appropriate sanctions should be. All right. But I guess my concern is that we're bound by G, and I want to be sure that I'm following it faithfully, but not necessarily expanding it. Maybe we will, maybe we won't, but just getting my head around it more fully. Isn't that an important similarity, that neither clinic was shut down, neither clinic was unlicensed, and this or that? You're saying you can still be unqualified, though licensed? Yes, Your Honor. Maybe you can explain that a little bit better for me. Yes, and if you look at the Medicaid statutes itself, specifically I'm thinking of 42 U.S.C. 1320A7, there are 16 different reasons, other than losing a license, why a Medicaid provider could be terminated, and that's in the federal statutes. One of those reasons is defaulting on student loans. That obviously has nothing to do with the provider's ability to perform medical services. So, again, that goes to the fact that being qualified for Medicaid is different from just being licensed to practice medicine in the state. And as a practical matter- And who makes that decision? The decision to- The nebulous decision of being unqualified because of some ethical concern that has been expressed by someone or somebody, be it some governmental organization. So who says this is unethical, other than the Attorney General's Office, and you said it? In this case, it was the Inspector General, who is charged with preventing fraud and abuse in the Medicaid program in Texas. It was the Inspector General who stated that these, if you credit these admissions under an arbitrary and capricious standard, that the researcher in question was violating federal law by agreeing to harvest baby body parts or fetal tissue samples, and they were violating accepted standards of medical ethics by even implying that they would increase a patient's pain by increasing the amount of dilation or whatever in order to secure an intact fetus. So the Inspector General, right? Yes, the Inspector General relied on the video evidence in this case, and in addition, evidence that was provided to the Attorney General's Office. What Judge Jones has said, which I thoroughly agree with, is there has to be some standard. The Inspector General can't come in and look at a bunch of facts and say, this violates our ethical standards. He's just talking about himself, unless he has some sort of guideline, which Judge Jones has pointed out and which could address the concern that I've expressed. Yes, Your Honor. It's also to point out in this case, the Inspector General also sought and relied upon the opinion of the Chief Medical Director of that agency, who also reviewed the video evidence and, as a surgeon himself, came to the conclusion that ethical standards were breached, medical and ethical standards. And the standards that we're talking about here are not sort of esoteric and vague. Did he specify what ethical standards? Did he articulate clearly what ethical standards had been violated? In the letter, it describes the various examples that were from the video, and the video shows a violation of conflict of interest, which, again, is a basic ethical concept in medical practice. That's the idea of the researcher performing the abortion to get tissue for her own research, which is a violation of federal law, and also the fact that her interest in the research was not disclosed to the patient is also an additional violation of federal law. That's a clear conflict of interest. Additionally, the modification of abortion procedures for the purpose of obtaining that tissue also runs afoul of the federal regulations for fetal tissue research. And in addition, the consent form that Planned Parenthood Federation mandated that all of their affiliates use for fetal tissue research stated to the patient that no modifications would be made to their abortion procedure as a result of that decision to donate their fetal tissue. Well, we don't – I don't mean to interrupt you, but you're running out of time, and we don't even get there. If we were to try to distinguish the Gee case, we don't even get there if we accept the district court's procedural choice to allow de novo review and hear extra testimony and not apply arbitrary and capricious. So what's your best argument for applying arbitrary and capricious? Your Honor, this court in Abbeville General Hospital applied arbitrary and capricious review to the conclusions of a state agency in applying the Medicaid Act. Of course, I mean, weren't the facts completely different in that case? They were. They involved setting standards under the Boren Amendment, but it was still part of the Medicaid Act. And if you think about the reason – if the court is inclined to say that there is a cause of action in this case, which, again, there should not be because this case is different from Gee and O'Bannon should control, but if this court were to say that there is a cause of action here, not applying a deferential standard of review to the state agency's conclusion would lead to negative results because it would encourage the provider, instead of going through the administrative process that the Medicaid Act requires the states to provide, and it would incentivize them to skip all of that and come straight to federal court to obtain a more favorable standard of review if de novo review applied because if it was just under the state administrative process and then judicial review in state court, it would only be substantial evidence required. And that's exactly what happened in this case. Planned Parenthood completely sidestepped the administrative proceedings. They chose to put no evidence in, and they chose to come straight to federal court and litigate this case using their patients as proxies. What happened, if anything, on remand in the Gee case? Your Honor, that case has a cert petition pending right now. Well, I know that from the Fifth Circuit, but it was only a preliminary injunction. Could the district court move forward in that case? I'm not sure, Your Honor. I believe that case has stayed. Okay. And what about the other cases around the circuits that have also disallowed states from defunding Planned Parenthood under state law? Did any of those involve trial de novo as opposed to arbitrary and capricious? Well, the Seventh and Ninth Circuit's decisions, importantly, did not involve a determination on the merits, just like the Gee case. In that case, there was a state law that prevented any state money from going to providers that provide abortion, and the courts in that case said it was not a matter of law. Exactly. Exactly, Your Honor. The Eighth Circuit actually held that there is no private right of action because there's no clear statement in the Medicaid Act providing this as a right. The Tenth Circuit decision is much broader than any other circuit court's decision, and the state would submit that it was an erroneous decision because it conflicts with O'Bannon. In that case, the Tenth Circuit actually allowed the plaintiffs in that case, there was a determination on the merits, and the court allowed the patients to challenge that determination, which is squarely contradicted by the O'Bannon case. The O'Bannon case, the Supreme Court said that patients, under the qualified provider provision, have a right to choose among a range of qualified providers and that patients clearly do not have a right to continued benefits from a provider that has been determined to be unqualified. In other words, the patients do not have a right to collaterally attack the state agency's ruling on the merits of whether or not that provider is qualified. And that makes sense for a lot of practical reasons. If the patients are allowed to have a cause of action, that would lead to two parallel tracks of litigation. The provider could challenge the disqualification in state administrative proceedings and seek judicial review in state court, and at the same time the patients could seek judicial review in federal court, and if the question is the same whether or not the provider is qualified, you would end up with two possibly conflicting results. Do we have any indication who was paying the DOE plaintiff's attorney's fees in this case? The DOE plaintiffs are being represented by Planned Parenthood Federation. There you go. Okay, and another question I had about the scope of the injunction here, since the 50 entities that are within the umbrella of Planned Parenthood in Texas are not all plaintiffs in this case, although the state would have them made so, or defendants, excuse me. We have only three plaintiffs, sorry, how many, seven plaintiffs here? Yes, Your Honor. Who went to three separate clinics, right? I think no more than three clinics. I mean, one of them said generally San Antonio, one of them said generally Austin, one of them said Houston. So let's assume it's three clinics. What justifies the district court in granting injunctive relief as to the broad scope of the entities here in Texas? We would submit that that injunction is overbroad because it goes beyond what relief would satisfy the injury of the plaintiffs. If the injunction only extended to the specific clinic that the plaintiffs stated in their declarations that they wanted to receive care from, that would satisfy their injury. There was not a case class, excuse me, certified in this case, so the injunction should not have extended beyond what relief was necessary. Well, the district court said, implied that was just a matter of time, because there was a motion for class certification, right? There was a motion for class certification, and it was withdrawn. Oh, withdrawn. Yes. And then how would this – what do I want to say? Does the state provide funding separately to each of the 50 entities or to some umbrella entity? Each clinic is separately qualified as a Medicaid provider. So if you look at, for example, the final notice of termination, that's at 1209 in the record. Actually, on page 1214, it lists all – they refer to them as TPI numbers, and each separate clinic who is reimbursed for services has their own account, and that's how the money is sent. So the total may be several million dollars, but it – tsk, tsk. We'll give you back 10 seconds. So the total may be over $3 million or whatever it was, but that is from aggregating each of the 50 amounts that the state provides? Yes. Okay. You have time for rebuttal. Thank you. All right. Ms. Sandman. May it please the Court. Jennifer Sandman from Planned Parenthood Federation of America for the Appellees. Your Honors, less than a year ago, this Court decided the Planned Parenthood of Gulf Coast VGIE case. Louisiana petitioned for rehearing en banc. The Court, as this Court is well aware, denied that petition. And that case considered Louisiana's attempt to terminate one of the same providers at issue here, Planned Parenthood Gulf Coast, based on the same video at issue here, and under the same cause of action that this Court construed in VGIE, and resoundingly rejected that attempt. The district court here – But what about this difference that there the qualification of the provider was conceded, and here it's not? Your Honor, it's really a semantic difference that I think has very little bearing on this case. Just as in this case, Your Honor, in the VGIE case, there was no effort by the State to show that the Medicaid provider, Gulf Coast, was not able to provide competent services. That's true here, too. There's no attack on their ability to provide medical services in a competent way. If – let's just for a moment assume that the video was accurately portrayed and not, you know, sliced and diced, as you suggest. That seems highly unethical. And so even if Mr. X or Dr. X is a competent doctor but acts unethically, would that not affect the qualification of that provider? Your Honor, I think – Your Honor, I'd like to respond to that on two different levels. First, as to the question about the difference between what this court considered in VGIE and what's at issue here. Just as in VGIE – just as here, in VGIE, the court was faced with charges of unethical behavior, fraud, misrepresentations. And this court made clear that if those allegations had been supported by adequate evidence, they would have constituted a basis for termination. However, this court said where there's no nexus factually where you're just painting a label of unethical conduct and it's not supported by the evidence, that cannot withstand the Medicaid beneficiary's free choice challenge. But that's only because he conducted de novo review, allowed Ms. Farrell to take the stand. Dr. Tran didn't take the stand, did she? Your Honor, the research – that's correct that the – she did not take the stand, Your Honor. Right, right. But she's on the video. Have you watched the video? I have, Your Honor. You what? I have, Your Honor, yes. You have not? I have, yes. Oh, good. Thank you. Because somebody in the lower court representing your side had not even watched it. Your Honor, that was me. I had watched the video at that stage, too. I had not watched certain portions of the video where there were no conversations. They appeared to take place in a conference room. I had read the transcript of the entirety of the video. There were portions of the eight hours with no dialogue that I had not watched. I had watched every aspect of the video that was at issue substantively here. And I'd like to talk about that substance because what does the video show here? The district court watched the entirety of the video, heard three days of testimony, made detailed, well-supported findings, and said that the video showed absolutely no evidence that any doctor at Gulf Coast or elsewhere ever did anything unethical. No alteration of the timing or method of an abortion. The district court said that, in fact, it was clear. Well, what kind of evidence would have persuaded the district court? Would the district court have had to talk to, would there have to have been Dr. Tyler on the, I guess that's her name, on the video? Your Honor, the district court found that no doctor even knew whether a particular patient had consented to donate tissues. But that's precisely the opposite of what Dr. Tran or Ms. Farrell says. I think it's Ms. Farrell who says that Dr. Tyler, and admittedly this was several years ago and she may not be associated with the group anymore, but Dr. Farrell, Tyler would look at the gestational age of the patients and pick and choose the gestational age because to optimize the harvesting. Your Honor, the testimony was very clear, the record was very clear, and the district court's findings were very clear that what actually happened was that the doctor who, the University of Texas Medical Branch doctor who was conducting this research, would let the clinic staff know which patients were within the appropriate gestational age for the research deeds, to know whether to ask them whether they wanted to donate tissue. She did not know, and the testimony and the district court findings are very clear on this, what decision any specific patient had made. The district court also found... Yeah, you keep talking about these findings and, you know, in the history of the world, people have perceived facts differently, so who's making the findings can matter. You know, that's why we have jury trials and this, that, and the other, because the fact finder matters. And here, by your own admission, it's the district judge, and shouldn't it be the state agency? Your Honor, what's at issue here is a Medicaid beneficiary's federal right, which Congress has afforded the beneficiaries a cause of action in federal court to decide whether their right to free choice of provider is violated. Right, but there's all kinds of causes of action in federal court where we have to give deference to an agency. That's not an amazing concept. And so I'm asking here, if you say the district judge is the fact finder, that's a really different world than if we say the inspector general was the fact finder, and we're now reviewing that, and the district judge is reviewing that as arbitrary and capricious. It doesn't end the federal court involvement, I agree, but it changes it. Just like de novo review here versus abusive discretion here is a different thing to me in my evaluation. Absolutely, Your Honor, and this court already applied correctly review to district court findings just as here. There was no reference in the Gee opinion to any form of difference to the inspector general findings in that case, where the inspector general just as here claimed that there was a misrepresentation and a fraud that constituted a basis. Excuse me? Was that raised? No, Your Honor. I do not believe that that argument was specifically made in the case. However, the court certainly was aware that just as in every other case to consider the free choice of provider claim, that it would be typical to have a cause of action where the Medicaid beneficiaries are vindicating their right in federal court, and where the court had already determined in the course of determining whether there's a private right of action, that the qualification standard is one that is well within the competency of a federal court to determine. The court held that in Gee. The Seventh Circuit and Ninth Circuit held the same. The Tenth Circuit held the same. Let me ask you, though. You said that you would acknowledge that the Seventh and the Ninth ruled only on a pure legal question that had to do with state law automatically disqualifying a provider like Planned Parenthood. So there was no need to get into who was qualified to determine the qualifications. Had you had an ordinary OBGYN practitioner, like the fellow in Philadelphia, who was doing all sorts of horrible things to the patients as well as the fetuses, then you're saying he couldn't have been disqualified by, he might have had one or two successful abortions, and when brought to task by Pennsylvania, had he ever been, those patients could have come in and been his stalking horses and said that he was okay, right? Is that what you're saying? Your Honor, what I'm saying is that a federal court is well situated to determine provider qualification, including to determine whether there's a violation of federal law. Is a federal court well equipped to judge medical, you know, the standards of medical practice, generally speaking? We rarely do that. I think federal courts are well situated to hear testimony, fact testimony, expert testimony, which is what happened here, and to make appropriate findings based on that testimony. But that's true. Why do we ever defer to any kind of agency of any kind, federal or state, if we're so good at this? Your Honor, there are some issues where an agency, where discretionary determinations are afforded to the agency, and as this Court noted in Abbeville, which is the only case that the State relies on for the novel proposition that arbitrary and capricious review is appropriate here, that's really the dividing line between where deference is due and where deference is not due, is based on the type of discretion that's afforded. This is not a discretionary determination. This is a basic determination of whether there was a violation of federal law. But Medicare, isn't that a cooperative federalism statute, so that it does in fact give a lot of leeway to the States to determine things? I mean, all that Guy says is that it has to do with, it adopts the verbatim language of the other circuits. The free choice provider requirement, let's see, as long as it's, oh, I've underlined so much here I can't find it. Anyway, it's qualified by ethics. Anyway, ethics is in there. I'm sorry to garble this. Your Honor, I take it. What would be a violation of medical ethics that would deprive a State of the right to, of the right to terminate a Medicaid provider? Your Honor, our position here is not that. Give me an example. Your position is that ethics has nothing, call this ethics. So your position is that the federal district court operating de novo found no violation of ethics, therefore there could even, right? What are you going for, the factual determination here or the broader determination that no, that the State can never disqualify someone for ethics? Your Honor, the former. There is absolutely no showing of any form of ethical misconduct here. There was no alteration of the timing or method of a procedure. There was no willingness. There was no conflict of interest. Well, what do you call admissions against interest in evidentiary law? Your Honor, there were no admissions against interest here. What about where Dr. Tron said, where they were talking about the possibility of delivering intact fetuses? And Dr. Tron said something about, well, that's rather difficult. We're, you know, implies that's something we're not supposed to do. You can't have the, quote, intent, and then she giggles. And then she says, but you can fill out the form. And the person on the Leiden or whoever it is, oh, you mean all you have to do is fill out a form? And she says, yeah, you fill out a form. Your Honor, I would deeply disagree with that characterization of what happened on that section of the video. She definitely smirked. There was some, I think that the fair read. What is your version? I think that the fair read, Your Honor, and this is what the district court concluded after hearing multiple days of testimony and reviewing the entirety of the video. The court said that there was absolutely no indication anyone ever altered a procedure or even knew. You heard what Judge Jones says the tape said. How do you disagree with what the tape said? The clear testimony, Your Honor, was that it is in the patient's best interest for the fetus to be removed as intact as possible. Up to a certain period of time. Did you not deny Judge Jones' version? I thought you said you took exception to her version of what was actually said on the tape. I believe that what was actually said on the tape is that in order to ensure that they comply with legal restrictions that are not at issue in this case, with ensuring that there's not intact delivery of a living fetus, that there are certain ways to document that process to ensure that the law is complied with. It's not a matter of documenting it, it's complying with the actuality of it. You can't contradict what you're not trying to, but you can't contradict what Dr. Tron said because she didn't appear on the stand in the district court. Your Honor, what she said is that they document compliance with the law. Smirk. That's what she said, and that is true. You can't, she said, you can't intend. Your Honor, I think that what, to the degree that the court wants to engage in reading of facial expressions on a video relating to conduct that's not at issue here, that is not at issue in this case. Your Honor, I think that what she said is that the court wants to engage in reading of facial expressions on a video relating to conduct that's not at issue here. Your Honor, none of the ethical violations were made out or factually supported. They might have been a basis for termination. They were not supported. Your view is that they are not supported. The state's view is they are supported. The district court engaged in a novel review decided that, I suppose decided, that they were not supported by the record. But I don't know how he argued with the Inspector General to arrive at that conclusion. Your Honor, let me speak, if I may, to the Inspector General's testimony, because he testified candidly that he did not know enough about abortion services to know whether anything on the video showed a violation of medical or ethical obligations. That was his candid testimony. He did not understand abortion well enough to know whether, in fact, there was such violation here. The medical director from Planned Parenthood, who testified as both the fact and expert witness in this case, testified very clearly that there was no alteration of timing or method of a procedure. And the district court judge properly credited his testimony, as well as the testimony of the research director, that no doctor even knew whether a particular patient had chosen to have an abortion. And the district court judge did not know whether a particular patient had chosen to donate tissue, as would, of course, be necessary to do any alteration. But, I mean, to me, a lot of this goes back to who's making the factual determination. One person's smirk is another person's nervous giggle or something like that. And that's exactly the problem. It seems to me you're saying the Inspector General can't make these determinations, but the judge can, and the judge is more knowledgeable about medical ethics and how to do abortions than the Inspector General. Again, it's who's making the decisions, I think, is a very key fact here. Your Honor, the Inspector General testified that he relied appropriately on the information from his chief medical officer. His chief medical officer testified that he didn't know enough about abortion to actually have a view. Then the district court heard testimony from both the state's expert witness and Planned Parenthood's expert witness, and appropriately made his own determination, as happens every day in federal courts. Whether, in fact, there was any ethical violation, and correctly decided that there was not. And if I may make just one more point in response to Judge Haynes' question, the only case that the state cites to for the novel proposition that this case would be reviewed under arbitrary and capricious review is Abbeville, which addressed the entirely different scenario of a rate-setting provision. Here, you're talking about a question of whether there was an ethical violation that would render a provider unqualified under medical ethics. That's what's appropriate here, too, because this is a federal, this is the vindication of a federal right in federal court. Now, you're going on, and here's where I must disagree with you. The Gee is precisely on point, because at least a half-dozen times in the majority opinion, it talks about the preliminary stage of the proceedings. We're on the pleadings. We haven't even gotten to the summary judgment stage. The Louisiana Department of Health concedes that this provider is qualified. There was no video that had anything to do with the facilities in Louisiana. They didn't, you know, nothing connected at all. There were allegations of improper behavior based on the quitam and, you know, an ongoing investigation, but absolutely not. It was a very shallow case, factually. And the court recognized that, and then the court goes on and keeps saying the unique facts of this case, the unusual facts of this case. Your Honor, this case is also a preliminary injunction. Yes, but there was no factual development about what had happened. And so there's no question of the standard of review of the factual decisions. And the standard is, according to this Gee opinion, whether the provider is qualified in the relevant sense of performing the needed medical services in a professionally competent, safe, legal and ethical manner. And there was a question of legal and a question of ethical and even a question of safe when you're, to the extent you're talking about saying, well, it's up to the amount of pain the patient can tolerate by being dilated more. Your Honor, in Gee, it is true that the record in Gee was less detailed. There was obviously not a three-day testimonial hearing. However, the district court considered fact declarations, considered letters that were the supposed basis for the claim of misrepresentation, as to which the court determined there was no factual nexus. And not one of those had to do with medical ethics. Your Honor, that's a distinction without a difference. The point is, if the allegations had been supported by evidence, they would have been a basis for termination. They were not, and that's what this court said. Well, actually, no, because again, the court says it has to do with medical ethics. And they're distinguishing unsupported allegations, so they're totally, you know, an ongoing investigation. And they're distinguishing a settled qui tam cases for whatever, where no liability was admitted. I mean, as a legal matter, you could disregard those. Your Honor, I see that I am out of time. If I may beg the Court's indulgence, I wanted to speak very briefly to the situation of the other two affiliates who have not yet been mentioned. You can do it on rebuttal. I'm on the wrong side, Your Honor. Go ahead. Thank you. I appreciate the Court's indulgence. So far the discussion has all been about Gulf Coast. I do want to address briefly the situation of Greater Texas and South Texas. These are two entirely separate corporations with their own CEOs, their own boards, finances, operations and decision making. They're not on the videos. They never participated in fetal tissue donation. The state is claiming it can terminate them from Medicaid solely because they are affiliated with Planned Parenthood. That simply is not permitted under federal law. And I want to just briefly read the language from Guy that I think is dispositive on this topic. The state relies on a provision of state law that says that you can terminate an affiliate for conduct of an affiliated entity. And the definition of affiliate in relevant part just says sharing common names. That's all that they're leaning on here as a basis to terminate these two independent Medicaid providers. In Guy this Court said Louisiana seems to rely on a bald assertion that it may terminate a provider for any reason supplied by state law. We reject that argument. The correct analysis is that they can terminate a provider only for reasons that bear on that provider's ability to perform the needed services in a competent, safe, legal and ethical manner. So this Court respectfully should affirm as to all three providers, but at minimum as to South Texas and Great Texas. The reading lesson is completed. Now I wanted to ask you this one question. If we decide that the standard of review is arbitrary and capricious and remand it to the District Court to make an assessment on that standard of review of the Inspector General of Texas findings about the issue here, what more do we need to decide in this case? Do we just remand it on that basis and not say anything about the other issues that are presented? Or is there another issue that we need to decide if we remand it for reconsideration under a different standard of review? Your Honor, if the Court is inclined to go in that direction and remand, I think that respectfully the Court should affirm on the current record as to Greater Texas and South Texas whose conduct is as to the two other affiliates. Your Honor, Greater Texas and South Texas whose conduct is not at issue in the video and respectfully that any remand. So you're saying that doesn't turn on standard of review? That turns on whether affiliated entities can be tainted by the same brush? Correct, Your Honor. Okay, thank you. I'd like to start by addressing what my friend just addressed, which is the issue of affiliation. And in this case, we are not simply relying on the fact that the entities share the same name. That's not true. We are relying on the fact that all of these entities are controlled by Planned Parenthood Federation. Their medical practice and standards and guidelines are all controlled by Planned Parenthood Federation. Their research activities are controlled and approved by Planned Parenthood Federation. But this seems like a doctor-gone-off script. I mean, that's the whole point of the unethical. Is it your argument that Planned Parenthood Federation has a series of ethics that are themselves unethical? Yes, Your Honor. Well, going to the policies that Planned Parenthood Federation has, that's the discrepancy between the policy they have only requiring their doctors to say that no substantial modifications to the procedure were done, and their consent form, which they also mandate, which does not require any modification. It tells the patient that no modifications will be done. That's a breach of ethical standards right there, and that's attributable to the controlling entity of all of these affiliates. But again, the issue, you know, Planned Parenthood Federation is here representing all of these affiliates. They have never repudiated anything that was said in the video. They continue to defend it. I mean, how is it that all of these investigations and all of this la-di-da has just essentially turned on the people who made the video, and not, I mean, these seem like very incendiary remarks that were made, and yet it doesn't seem to have yielded anything, and so it makes me wonder what really happened. Can you answer that? I mean, how have all these investigations left Planned Parenthood as the victim, rather than as the perpetrator? As a wrongdoer, at least the doctor in question, you know, maybe went off script or whatever. Well, I do know that the Department of Justice and the FBI are continuing to investigate this. But going back to the video, the video is clear what it shows. They said the things on the video. They never disputed what they said on the video. They just tried to explain it away afterward, and their explanations were completely implausible. They claimed they were only talking about tissue packaging, when in reality they repeatedly talked about patient pain, the position of the fetus in the uterus, and patient safety, which would not be involved in packaging. So their explanations are just false, and Planned Parenthood Federation has never repudiated any of these statements. Melissa Farrell was never disciplined. That's in the testimony. She was never disciplined for what she said on the tape. And so they stand by what she said. They still believe that they did nothing wrong. Which brings me back to what the video said. Ms. Sandman focused her argument on whether or not there was actual evidence of modification in the video. Setting aside the issue of modification, she never addressed the fact that is clearly stated on the video that a researcher was doing abortions to harvest fetal tissue for her own research. They have never denied that. Their only explanation is, number one, that she didn't know that she was doing an abortion on somebody who consented, which is irrelevant. It's still wrong for her to be involved in that process, according to the federal regulations. That would just imply that she'd harvest the tissue every single time, right? In other words, if she's trying to get certain tissue for fetal research, and she's... So she's picking out the gestational ages, right? So she doesn't know whether the patient consented, but she does know the patient is like two to three months or whatever. And so she has to harvest the maximum amount of tissue each time in order to ascertain which one, in order to get the samples for herself. That's right, that's right. So whether or not the patient consented. That's possible. I mean, either way, it still contradicts... a procedural question, and that is, if we reverse, as I've earlier said, the possibility, of course, to reconsider under arbitrary and capricious standard, what happens if we remand this case now, this preliminary injunction, to the district court? As a practical matter, what do you anticipate the case taking now? At what turn? Well, in that case, then the district court would have to pay appropriate deference to the inspector general. Would you just start over, is that what you're saying, on the preliminary injunction, after it's been so long since the preliminary injunction was issued? It seems to me that the court could just look, if it was... an arbitrary and capricious review would only be limited to the... district court would have to look at what was in the administrative record, so that would just be the video and the referral materials from the House of Representatives, and decide whether... It seems to me that that would be correct, Your Honor. Yes, Your Honor. Okay, thank you.